IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-CV-00886-REB-KMT

BRILLIANT OPTICAL SOLUTIONS LLC,

Plaintiff,

v.

COMCAST CABLE COMMUNICATIONS, LLC,

Defendant.

_____

**DEFENDANT COMCAST CABLE COMMUNICATION, LLC'S
[CORRECTED] [#48] MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD
ATTORNEYS' FEES AND REQUEST FOR HEARING WITH SUPPORTING
DECLARATION AND EXHIBITS [## 49, 49-1 TO 49-12, 50, 50-1 TO 50-10 AND 58]**

_____

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS ........................................................................................1

   A. The Parties .................................................................................................1

   B. The Litigation ..............................................................................................3

   C. Comcast's Complete License Defense.......................................................4

      1. The <span style="color:red">REDACTED</span> License Provided Comcast with a Complete Defense.................4

      2. The <span style="color:red">REDACTED</span> License Provided Comcast with a Complete Defense....................5

   D. BOS's Lengthy Refusal to Produce the License Agreements ............................7

   E. BOS's Unilateral Dismissal with Prejudice............................................................8

   F. Comcast's Substantial Fees and Costs Arising from This Litigation ..................8

II. ARGUMENT ........................................................................................................9

   A. This is an Exceptional Case Warranting the Award of Attorneys' Fees .............9

      1. This Case is Objectively Baseless ...............................................................10

      2. BOS Brought and Maintained This Case in Subjective Bad Faith ..............12

      3. BOS Engaged in Material Misconduct, Delaying Discovery ........................13

   B. Acacia's and BOS's Pattern of Conduct Warrants an Award of Fees..............14

III. Conclusion ........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*AeroTech, Inc. v. Estes*,
110 F.3d 1523 (10th Cir. 1997)....................................................................... 14

*BIAX Corp. v. NVIDIA Corp.*,
No. 09-CV-01257-PAB-MEH, 2013 WL 1324935 (D. Colo. Mar. 30, 2013)............... 12

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005) ................................................................. 9-10

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
903 F.2d 805 (Fed. Cir. 1990) ....................................................................... 12

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) ..................................................................... 13

*Genl Protecht Group, Inc. v. Leviton Mfg. Co.*,
651 F.3d 1355 (Fed. Cir. 2011) ..................................................................... 12

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) ...................................................................................... 10

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
No. 12-1163, 2014 WL 1672043 (Apr. 29, 2014).................................................. 9, 10

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
687 F.3d 1300 (Fed. Cir. 2012) ..................................................................... 10

*Highway Equip. Co. v. FECO, Ltd.*,
469 F.3d 1027 (Fed. Cir. 2006) ....................................................................... 9

*Jacobs v. Nintendo of Am., Inc.*,
370 F.3d 1097 (Fed. Cir. 2004) ......................................................................11

*Kilopass Tech., Inc. v. Sidense Corp*,
738 F.3d 1302 (Fed. Cir. 2013) ..................................................................... 12

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
No. 12-1184, 2014 WL 1672251 (Apr. 29, 2014)........................................... 9, 10, 14

*Rambus Inc. v. Infineon Techs. AG*,
318 F.3d 1081 (Fed. Cir. 2003) ..................................................................... 13

*Raylon, LLC v. Complus Data Innovations, Inc.,*
   700 F.3d 1361 (Fed. Cir. 2012) (Reyna, J. concurring).............................................. 12

FEDERAL STATUTES

35 U.S.C. § 285 .................................................................................................passim

Fed. R. Civ. P. 54(d) ................................................................................................. 1

28 U.S.C. § 1927 ...................................................................................................... 1

This case is exceptional and warrants the award of attorneys' fees.  Acacia Research Group and Acacia Research Corporation ("Acacia"), through their wholly-owned subsidiary Brilliant Optical Solutions ("BOS"), filed and maintained this suit against Comcast knowing that their very own patent licenses provided Comcast a complete license defense, yet they refused to produce those licenses to Comcast.  Acacia and BOS maintained this case for over a year before unilaterally dismissing it with prejudice after Comcast finally obtained copies of the exculpatory licenses and confronted Acacia and BOS with them.  Perhaps even more importantly, this is just the latest in a series of meritless cases filed against Comcast by Acacia and its related entities.  Acacia, directly and through shell subsidiaries such as BOS, has sued Comcast five times since 2004, never once prevailing against Comcast.  Acacia's repeated meritless suits have caused Comcast needless expense and distraction.

Comcast now requests that the Court declare this case exceptional and order Acacia and BOS to reimburse Comcast for its reasonable fees and costs pursuant to 35 U.S.C. § 285, Fed. R. Civ. P. 54(d), 28 U.S.C. § 1927, and the Court's inherent power.

## I.   STATEMENT OF FACTS

### A.  The Parties

Comcast is the nation's largest cable operator, offering video, voice, and data service to subscribers in 39 states and the District of Columbia.  (Faltin Decl., ¶ 4.) Comcast also offers a Business Class Network, which provides high-speed network services to its business customers.  (*Id.,* ¶ 5.)  Comcast's Business Class Network transmits data between customers using high-speed devices called REDACTED provided to

Comcast by equipment vendors **REDACTED**       .  (*Id.,* ¶ 6.)

Plaintiff BOS is a limited liability company, formed less than two months before it sued Comcast.  BOS is wholly owned by Acacia Research Group, which is wholly owned by Acacia Research Corp.  (Hanlon-Leh Decl., Ex H, at 9.)  BOS has no employees, no physical offices of its own, and no assets other than the patent at issue in this litigation.  (*Id.* at 6-7.)  Instead, BOS is managed solely by Acacia employees, and Acacia employees negotiate and sign all of BOS's licenses.  (*Id.* at 9.)

Acacia is a publicly-traded patent holding company that does not practice any of its patents, but which touts its "hundreds of license and settlement agreements" secured through the enforcement of those patents.  (Hanlon-Leh Decl., Ex. I, at 2.)  Acacia is one of the two most active patent plaintiffs in the country, leading all but one patent holder in the number of cases filed and the number of defendants sued.  (Hanlon-Leh Decl., Ex. J, at 29-30.)  From 2008 to 2012, Acacia, through its shell subsidiaries like BOS, sued 1,276 defendants in 402 cases.  (*Id.* at 30.)

Comcast is familiar with Acacia and its tactics, having been sued by Acacia subsidiaries many times before this case.  (Faltin Decl., ¶ 7.)  Acacia and its subsidiaries have never won any case against Comcast.  (*Id.,* ¶ 8.)  In three prior cases, Acacia either unilaterally dismissed its case against Comcast or lost outright.  (*Id.,* ¶ 9.)  Those prior meritless suits cost Comcast approximately **REDACTED**     dollars in unnecessary legal fees.  (*Id.,* ¶ 10.)  This case continues Acacia's history of bringing unsuccessful and frivolous suits against Comcast.

2

### B.  The Litigation

Over a year ago, on April 5, 2013, Acacia's subsidiary BOS sued Comcast—without any prior notice—alleging infringement of U.S. Patent 5,555,478 (the "'478 patent") [#1].  After being sued, Comcast's in-house counsel flew from Philadelphia to Denver to meet with Acacia's in-house counsel for settlement discussions.  (*Id.,* ¶ 15.)  During that meeting, Acacia's counsel presented its basis for accusing Comcast of infringement.  (*Id.,* ¶ 16.)  Acacia alleged that Comcast's Business Class Network infringed the '478 patent due in part to Comcast's use of network devices, called REDACTED which Comcast purchases from third-party vendors.  (*Id.*)  More specifically, Acacia asserted that at least two necessary elements of every patent claim—the Intelligent Routing Cards ("IRCs") and Intelligent Line Modules ("ILMs")—were satisfied solely by Comcast's use of REDACTED purchased from third-party vendors   **REDACTED**

.  (*Id.,* ¶ 17.)  Acacia then demanded that Comcast pay REDACTED to settle the case.  (*Id.,* ¶ 18.)  Comcast declined.

On January 23, 2014, BOS served its infringement contentions confirming that its infringement allegations were based on Comcast's use of third-party REDACTED .  BOS again alleged that the IRC limitations of every asserted claim were met by Comcast's use of

**REDACTED**        , and BOS similarly alleged that the ILM limitations were met solely by Comcast's use of REDACTED provided by        **REDACTED**

(Hanlon-Leh Decl., ¶¶ 24-25.)  BOS did not contend that any other component of Comcast's network met the patent claims' requirements for IRCs and ILMs.

### C. Comcast's Complete License Defense

BOS never should have sued Comcast because BOS knew all along that the suppliers of Comcast's REDACTED already had broad licenses to the '478 patent permitting end users such as Comcast to use their REDACTED without fear of being sued by Acacia or BOS.  First,                    **REDACTED**

Second, after suing Comcast, BOS sublicensed the '478 patent to   **REDACTED**

Together and separately, those licenses provided Comcast a complete defense to BOS's claims.

### 1.   The REDACTED License Provided Comcast with a Complete Defense

On June 29, 2012—*nine months* before suing Comcast—Acacia granted REDACTED Agreement" (the 'REDACTED License").  (Hanlon-Leh Decl., Ex. L.)  In that agreement, Acacia "on behalf of itself and its Affiliates"[1] agreed                **REDACTED**

"  (*Id.* at § 2.3.)

There can be no dispute that this clause prohibited BOS from suing Comcast for infringing the '478 patent.  Comcast is REDACTED customer and a user of REDACTED products. Consequently, Comcast falls squarely within the definition of   **REDACTED**

---

[1] BOS is an "Affiliate" because BOS is "owned or controlled" by Acacia.  (*Id.* at § 1.8.)
[2] The '478 patent is an        REDACTED        because Acacia obtained the rights to that patent during the coverage period of the REDACTED License.  (*Id.* at § 1.4; [#1-5 & #1-6].)

which include                                 **REDACTED**

(*Id.* at § 1.9.)  Moreover, the accused product in this case, Comcast's Business Class

Network, is a covered                          **REDACTED**

                         *Id.* at § 1.12.)  Comcast's Business Class Network also satisfies

the definition of        **REDACTED**        because, as BOS alleges, it is a " **REDACTED**

               (*Id.* at § 1.13.)  Thus, the REDACTED License plainly prohibits BOS from accusing

Comcast's Business Class Network of infringement based on the use of REDACTED devices.

       REDACTED paid Acacia REDACTED of dollars for its license, and REDACTED fully expected that

the REDACTED License would protect its customers from patent infringement suits like this one.

In fact, after learning of this lawsuit, REDACTED *sent Acacia a cease-and-desist letter*

demanding that Acacia "immediately notify its affiliate Brilliant Optical and REDACTED customer

Comcast in writing that Comcast is a              **REDACTED**

                          and cease and desist making any further

infringement allegations against          **REDACTED**          in the Litigation."

(Hanlon-Leh Decl., Ex. M.)  In short, BOS never should have sued Comcast in this case,

where BOS's infringement theory relied on Comcast's use of   REDACTED , because that

use benefitted from a      **REDACTED**      by Acacia and its subsidiary BOS.

       **2.    The** REDACTED **License Provided Comcast with a Complete Defense**

       Comcast also enjoys the benefit of a license to the '478 patent that BOS granted to

a company called                             **REDACTED**

REDACTED

(Hanlon-Leh Decl., Ex. P.)  On September 30, 2013—over seven months ago—Acacia and REDACTED entered into a REDACTED BOS and REDACTED entered into a related REDACTED (the REDACTED License").  (Hanlon-Leh Decl., Exs. N & O.)  In the REDACTED License, BOS licensed the '478 patent to REDACTED and *granted sublicenses to* REDACTED .  (Hanlon-Leh Decl., Ex. O, at § 1.2(a).) REDACTED (*Id.* at Ex. B-1.)

According to the REDACTED License, a sublicense to REDACTED (*Id.* at § 1.2(c).)

REDACTED

(*Id.*) REDACTED

(*Id.* at 2-3.)  Thus, this license unambiguously permits Comcast's use of REDACTED in combination with other products. REDACTED paid Acacia REDACTED of dollars for its patent license, and REDACTED believed that the license extended to REDACTED For example, when REDACTED learned of BOS's suit against Comcast, REDACTED sent REDACTED a letter confirming that " REDACTED

6

**REDACTED**                                        (Hanlon-Leh Decl., Ex. Q.)

REDACTED also confirmed that the                    **REDACTED**


(*Id.* at 2.)  Thus, this License expressly prohibits BOS's accusations of

infringement based on Comcast's use of        **REDACTED**

### D.  BOS's Lengthy Refusal to Produce the License Agreements

During the settlement discussion in July 2013 Comcast asked Acacia to promptly

provide copies of all licenses covering the '478 patent.  Acacia agreed at the time, but

then failed to produce them.  (Faltin Decl., ¶ 19.)  On November 19, 2013, Comcast

served discovery requests asking BOS to list, describe, and produce all licenses covering

the '478 patent.  (Hanlon-Leh Decl., ¶ 32.)  On January 13, 2014, BOS responded by

informing Comcast for the first time that it had licensed the '478 patent to **REDACTED**,

but BOS refused to provide any details of those licenses and failed to produce copies of

them.  (Hanlon-Leh Decl., Ex. R, at 7-9.)  Frustrated by BOS's refusal to produce the

**REDACTED**  Licenses, Comcast served a third-party subpoena on REDACTED on January 21,

2014, requesting a copy of its license to the '478 Patent.  (Hanlon-Leh Decl., Ex. S.) REDACTED

dutifully produced the REDACTED License on February 4, 2014.  (Hanlon-Leh Decl., ¶ 36.)

Meanwhile, BOS still refused to produce the REDACTED License.  (Hanlon-Leh Decl.,

Ex. T.)  Without providing any legal explanation for its refusal, BOS simply blamed REDACTED

for refusing to give BOS permission to produce the license.  (*Id.* at 3.)  That excuse was

groundless.  The governing Protective Order does not permit a party to refuse production.

Instead, it places the burden on the *third-party* seeking to prevent production to file a motion for a protective order if it wishes to prevent disclosure of a document due to confidentiality concerns [#36, §10(c)].  Setting aside BOS's incorrect reading of the Protective Order, it is even more troubling that REDACTED was actually *willing* to produce its License.  When Comcast's in-house counsel contacted REDACTED in-house counsel directly, REDACTED in-house counsel *agreed* that its License could be produced in this litigation. (Faltin Decl., ¶ 20.)  After Comcast secured REDACTED permission, BOS finally produced the REDACTED License on March 17, 2014, nearly four months after Comcast's discovery requests.  (Hanlon-Leh Decl., ¶ 38.)  That License clearly demonstrated that BOS never should have sued Comcast in the first instance.

### E.  BOS's Unilateral Dismissal With Prejudice

On March 31, 2014, after analyzing the long-sought **REDACTED**   Licenses, counsel for Comcast sent BOS a letter describing in detail the basis for Comcast's complete license defense.  (Hanlon-Leh Decl., Ex. U.)  Importantly, Comcast's letter did not tell BOS anything that BOS did not already know, yet just over two weeks later, on April 16, 2014, BOS unilaterally sought to dismiss the case with prejudice [#43].

### F.  Comcast's Substantial Fees and Costs Arising from This Litigation

During the year this case was pending, Comcast was forced to investigate and defend against BOS's baseless claims, including: conducting a technical infringement analysis, including interviews with technical experts at Comcast; conducting a prior art search; engaging technical consulting experts; drafting and serving invalidity contentions, including prior art charts; analyzing and briefing claim construction arguments;

propounding and responding to discovery and discovery disputes; collecting over 16 gigabytes of Comcast's documents in response to BOS's overly broad document requests; reviewing and producing documents; issuing 7 third-party subpoenas to obtain documents (including the relevant licenses) that BOS failed to produce; and drafting a petition for *Inter Partes* Review of the '478 patent.[3]  (Hanlon-Leh Decl., ¶¶ 10-11.)  These necessary activities resulted in REDACTED   of attorneys' fees and costs, which were necessary and reasonable under the circumstances.  (*Id.*, ¶¶ 12-13.)  Comcast respectfully requests that the Court order BOS to reimburse these fees and costs.

## II.   ARGUMENT

### A.  This Is an Exceptional Case Warranting the Award of Attorneys' Fees

Pursuant to 35 U.S.C. § 285, a court "may award reasonable attorney fees to the prevailing party" in a patent infringement case it deems exceptional.[4]  Until recently, the United States Federal Circuit Court of Appeals imposed a strict standard and required clear and convincing evidence for shifting fees in patent cases.  On April 29, 2014, the U.S. Supreme Court overruled the Federal Circuit, and significantly relaxed the requirements for fee-shifting.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, No. 12-1184, 2014 WL 1672251 (Apr. 29, 2014); *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 12-1163, 2014 WL 1672043 (Apr. 29, 2014).

In *Octane Fitness* and *Highmark*, the Court unanimously overruled *Brooks*

---

3 Comcast's investigations revealed serious flaws in the patent's validity and BOS's infringement theories.  Even apart from Comcast's license defense, BOS would not have prevailed in this suit.
4 Comcast is the prevailing party.  BOS unilaterally filed an unopposed motion to dismiss with prejudice on April 16, 2014.  *See, e.g., Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035–36 (Fed. Cir. 2006) (interpreting covenant not to sue and dismissal under Rule 41(a)(2) sufficient to confer prevailing party status on the defendant).

*Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), and its progeny, as "unduly rigid" and as "impermissibly encumber[ing] the statutory grant of discretion to district courts."  *Octane*, 2014 WL 1672251, at *5; *see also Highmark*, 2014 WL 1672043, at *3.  The Court provided a broad definition of an "exceptional" case, holding that:

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.

*Octane*, 2014 WL 1672251, at *5.  The Court further explained that fee-shifting is warranted where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at *6.  Moreover, *either* subjective bad faith *or* objectively baseless claims alone may warrant fee-shifting under § 285.  *Id.*; *see also id.* at *5 n.6 (providing a non-exclusive list of equitable factors).  The Court also rejected a heightened clear-and-convincing standard to establish an exceptional case, finding no reason to depart from the preponderance-of-the-evidence standard, "because it 'allows both parties to share the risk of error in roughly equal fashion.'"  *Id.* at *7 (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)).  As discussed below, this case is exceptional and warrants an award of fees.

### 1.    This Case Is Objectively Baseless

A case is objectively baseless if "no reasonable litigant could reasonably expect success on the merits."  *See, e.g.*, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1309 (Fed. Cir. 2012) (quotation omitted), *vacated on other grounds*, No. 12-1163, 2014 WL 1672043.  This case has been objectively baseless from the beginning.  BOS and its parent company Acacia knew from the start that Acacia had granted [REDACTED] a

license prohibiting Acacia and its subsidiaries                    REDACTED

                                                    and yet based its infringement

allegations from the beginning on Comcast's use of REDACTED products.  Moreover, events

during litigation should have triggered dismissal long ago.  The REDACTED License—signed

more than six months before dismissal—granted            REDACTED


It would be absurd for BOS and Acacia to argue that the licenses do not extend to

        REDACTED          when they expressly state that they do. REDACTED

                    REDACTED


        (Hanlon-Leh Decl, Exs. M & Q.)

        Acacia received REDACTED of dollars in license fees for the  REDACTED  Licenses

and cannot renege on them now.  BOS and Acacia are "barred … from interfering" with

the rights granted in the Licenses by prohibiting Comcast            REDACTED

                    See Jacobs v. Nintendo of Am., Inc., 370 F.3d 1097, 1101 (Fed.

Cir. 2004).  The rights Acacia and BOS granted in those licenses would be meaningless if

Acacia, through BOS, could sue                REDACTED

                    Id.  This "is in accordance with the basic contract law principle that a

party may not assign a right, receive consideration for it, and then take steps that would

render the right commercially worthless." *Id.* Acacia and BOS cannot "derogat[e] from rights granted under the license[s]." *See Gen. Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011) (citations omitted)). In short, the Licenses provide Comcast— **REDACTED**

and Acacia and BOS have known that for months.

### 2. BOS Brought and Maintained This Case in Subjective Bad Faith

"[S]ubjective bad faith only requires proof that the lack of objective foundation for the claim was either known or so obvious that it should have been known by the party asserting the claim." *Kilopass Tech., Inc. v. Sidense Corp*, 738 F.3d 1302, 1311 (Fed. Cir. 2013) (quotation omitted). Even if a plaintiff filed a case in good faith, it is not insulated from fee-shifting if it pursues its claim in bad faith after events in the case have made its claim baseless. *See BIAX Corp. v. NVIDIA Corp.*, No. 09-CV-01257-PAB-MEH, 2013 WL 1324935, at *5 (D. Colo. Mar. 30, 2013); *see also Raylon, LLC v. Complus Data Innovations, Inc.,* 700 F.3d 1361, 1373-74 (Fed. Cir. 2012) (Reyna, J. concurring).

There can be no doubt that Acacia and BOS brought and maintained this suit in bad faith. Acacia and BOS knew of the existence and the terms of the **REDACTED** Licenses because Acacia and BOS were parties to those agreements.[5] Despite this knowledge, Acacia and BOS expressly relied on licensed **REDACTED**

to support their infringement allegations. This alone is sufficient to establish bad faith. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("Where, as here, the patentee is manifestly unreasonable in assessing infringement, while

---

5 BOS cannot argue that BOS's and Acacia's knowledge differ. Acacia and BOS share in-house counsel. (Faltin Decl., ¶ 21.)

continuing to assert infringement in court, an inference is proper of bad faith[.]").

### 3.   BOS Engaged in Material Misconduct, Delaying Discovery

In addition to bringing and maintaining meritless claims, BOS engaged in dilatory discovery tactics, which further justify fee-shifting.  *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) ("Litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.").  BOS knew from the start that the **REDACTED** Licenses gave Comcast a license defense; however BOS impeded Comcast's discovery of those licenses for months.  (*See* Hanlon-Leh Decl., Ex. V.)  When Comcast requested those licenses, first informally and then formally, BOS failed to produce them.  BOS's excuse was that **REDACTED** had not expressly granted permission for BOS to produce the licenses.  (Hanlon-Leh Decl., Ex. T.)  That excuse was a violation of the Protective Order [#36].  The Protective Order does not allow BOS to refuse production of documents implicating third-party confidentiality.  Instead, the protective order expressly places the burden of seeking protection of confidential information squarely on the third-parties [#36, §10(c)].  Under that Order, BOS could not unilaterally withhold responsive and highly relevant documents.

Moreover, when Comcast sought the **REDACTED** Licenses directly from those third-parties, they *consented* to production.  By refusing to produce the **REDACTED** Licenses, BOS forced Comcast to expend unnecessary time, expense, and resources to obtain those licenses from third-parties.  Such exploitation of the discovery process "to impose disproportionate discovery costs on" a defendant warrants an exceptional case finding.  *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

## B. Acacia's and BOS's Pattern of Conduct Warrants an Award of Fees

Fee-shifting is further warranted in this case due to Acacia's ongoing pattern of bringing meritless suits against Comcast.  "[W]hen a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system, attorneys' fees might be appropriate." *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997).  The current case is the fifth suit filed against Comcast by Acacia since 2004.  In two of those cases, Acacia unilaterally dismissed the case without explanation.  In a third, Comcast won on the merits in the district court and on appeal after 6 years of litigation.   Acacia's pattern of conduct in this case is particularly similar to its litigation conduct in the *DNLookup* case. In that case, as here, Acacia sought to prevent Comcast's access to relevant license agreements, thus hindering its ability to efficiently mount a license defense.  (Faltin Decl., ¶ 11.)  Acacia dismissed the *DNLookup* case in late June 2013—after nineteen months of litigation—just as Comcast was preparing to file a motion to compel access to the relevant licenses.  (*Id.*)  In no case has Acacia or a subsidiary prevailed over Comcast, yet Acacia continues to bring meritless suits.  Acacia's repeated practice of suing and dismissing after inflicting substantial litigation costs further warrants the award of fees in this case.

This pattern of conduct by Acacia and similar non-practicing entities ("NPEs," often called "patent trolls") has contributed to an upsurge in public opinion against frivolous patent infringement cases.  Section 285 is a tool often cited by experts as providing Courts the ability to curb abusive litigation.  (Hanlon-Leh Decl., Ex. W.)  The *Amicus Curiae* Brief of the United States, filed in connection with the *Octane Fitness* case and

largely adopted by the Supreme Court, is instructive.  (Hanlon-Leh Decl., Ex. X.)  In that brief, the government observed that NPEs:

> typically do not face (and are often structured to avoid) the normal disincentives to filing vexatious or frivolous infringement claims … are not vulnerable to infringement counterclaims and may face little reputational risk from pursuing aggressive litigation strategies.  Many are established as shell companies for the purpose of filing suit.  For a subset of such [NPEs] … litigation is not a cost but a method of doing business designed to extract serial settlements from multiple defendants.

(*Id.* at 19.)  Thus, "[b]y enabling district courts to award reasonable attorney's fees to prevailing defendants who have been unfairly targeted by such firms, Section 285 can deter misconduct and enable victims to defend themselves."  (*Id.* at 20.)  That is exactly what Comcast is seeking here—to curb vexatious litigation of a serial patent plaintiff.

## III.  CONCLUSION

For the reasons set forth above and in the concurrently filed declarations, Comcast respectfully requests that the Court set a hearing, declare the case exceptional, and order BOS to reimburse Comcast for the expenses it needlessly incurred in this baseless suit.

Respectfully submitted this 15th day of May, 2014.

FAEGRE BAKER DANIELS LLP

s/ *Mary ("Mindy") V. Sooter*
Natalie Hanlon-Leh
Mary ("Mindy") V. Sooter
Christopher L. Larson
3200 Wells Fargo Center
1700 Lincoln Street, Denver, CO 80203
P: (303) 607-3500; F: (303) 607-3600
Email: natalie.hanlonleh@faegrebd.com
Email: mindy.sooter@faegrebd.com
Email: chris.larson@faegrebd.com
*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1A, the undersigned counsel certifies that on multiple occasions between April 2 and May 6, 2014, outside and in-house counsel for Comcast conferred with outside and in-house counsel for Acacia (representing BOS) in an effort to resolve this request for fees without a motion.  The parties were unable to reach agreement. It is Comcast's understanding that BOS and Acacia oppose this motion.

FAEGRE BAKER DANIELS LLP

s/ *Mary ("Mindy") V. Sooter*
Mary ("Mindy") V. Sooter
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Phone: (303) 607-3500
Fax: (303) 607-3600
Email: mindy.sooter@faegrebd.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2014, I electronically filed the foregoing **DEFENDANT COMCAST CABLE COMMUNICATION, LLC'S [CORRECTED] [#48] MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEYS' FEES AND REQUEST FOR HEARING WITH SUPPORTING DECLARATION AND EXHIBITS [## 49, 49-1 TO 49-12, 50, 50-1 TO 50-10 AND 58]** with the Clerk of Court using the *CM/ECF* system which will send electronic notification of such filing to all counsel of record.

Robert R. Brunelli
David B. Kellis
Sheridan Ross P.C.
1560 Broadway, Suite 1200
Denver, Colorado  80202-5141
rbrunelli@sheridanross.com
dkellis@sheridanross.com
litigation@sheridanross.com

*s/ Margaret M. Zylstra*